# EXHIBIT 2

FILED
CLERK
ORIGINAL

NOV − 7 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>              v.<br><br>LEIGH DORAND,<br><br>              Defendant. | SA CR 07 **SA CR 07 - 00245**<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1343: Wire Fraud] |

The United States Attorney charges:

COUNT ONE

[18 U.S.C. § 1343]

I.   INTRODUCTION

At all times relevant to this Information:

1.   Defendant LEIGH DORAND ("defendant"), owned and operated Technology Capital in Scottsdale, Arizona.

JAW:jlw



## II.  THE FRAUDULENT SCHEME

2.  Beginning in or around 2005 and continuing through in or around 2006, in Orange County, within the Central District of California, and elsewhere, defendant and others knowingly and with the intent to defraud, devised, executed, and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and the non-disclosure and concealment of material facts, in connection with a fraudulent equipment lease scheme.

3.  The fraudulent equipment lease scheme was designed to operate and did operate, as follows:

(a)  Defendant and employees at Technology Capital would solicit small businesses in Orange County, California, and elsewhere, that required an infusion of cash to cover their operating expenses, such as rent payments and payroll.

(b) Defendant and employees at Technology Capital communicated with customers who responded to the ads, and reiterated that Technology Capital could obtain money loans for them.  Defendant and employees at Technology Capital would tell the customers that they would receive money, but would also have to accept some equipment with which the customers were free to do with it what they wished.

(c)  Once the small businesses agreed to defendant's assistance, defendant used false statements and promises to induce lenders to provide loans to the small businesses.  More precisely, defendant, through various brokers, caused equipment

2

1 lease applications to be submitted to lenders through vendors
2 ("Vendors"), which purported to sell equipment, typically,
3 computers, to businesses.  In these lease applications, the
4 Vendors falsely represented to the lender that the small
5 businesses needed financing for the purchase of the Vendors'
6 equipment.  To corroborate this claim, the Vendors submitted
7 false invoices that purported to document the sale of equipment
8 to the small businesses.

9      (d)  Before funding the lease, the lenders contacted
10 the small businesses to confirm that the small businesses, in
11 fact, had purchased, installed, and were using the equipment
12 obtained from the Vendors.  Defendant and the Vendors coached the
13 small businesses to provide false information to the lenders in
14 response to these questions.

15      (e)  Based upon false information, the lenders approved
16 the applications and forwarded money to the Vendors for the
17 purported equipment purchases.

18      (f)  Rather than using the lease proceeds to purchase
19 equipment as promised, the Vendors took the money received from
20 the lending institutions, kept a portion for themselves, caused a
21 portion of the money to be paid to the lessee as a cash loan, and
22 caused a portion to be paid to Technology Capital, from which
23 defendant received funds.

24     4.  In order to execute the scheme, defendant made and
25 caused to be made false statements and false promises to
26 prospective borrowers and lenders, including, without limitation,
27 the following:

28

3

(a) Technology Capital assisted small businesses obtain bona fide cash loans;

(b) The Vendors were bona fide equipment vendors that sold office equipment to businesses and individuals;

(c) Technology Capital and the Vendors worked with small businesses who wished to obtain financing from lenders for the purchase of equipment;

(d) Technology Capital and the Vendors would provide true and accurate sales invoices to the lenders;

(e) Technology Capital and the Vendors would instruct the small businesses to provide true and correct information to lenders concerning the purchase, installation, and use of the equipment allegedly purchased from the Vendors; and

(f) Technology Capital and the Vendors would cause the lenders' funds to be used exclusively for the purchase of the equipment specified in the sales invoices.

5.    At the time defendant made the false statements and false promises, and caused them to be made, he knew that such statements and promises were false, in that:

(a) Technology Capital obtained fraudulent equipment leases, not bona fide cash loans, for small businesses;

(b) The Vendors were in the business of fraudulently depriving lenders of their money, not selling office equipment to businesses and individuals;

(c) Technology Capital worked with small businesses that wished to obtain cash loans from lenders, not financing for the purchase of equipment;

4

1          (d)   The Vendors submitted false invoices to the
2  lenders detailing purported equipment sales that never occurred;
3          (e)   At defendant's direction, the small businesses
4  were coached to falsely verify to the lenders that the businesses
5  had purchased, installed, and were using equipment allegedly
6  acquired from the Vendors; and
7          (f)   Defendant and the Vendors used the lease proceeds
8  to improperly make cash loans to the small businesses and for
9  their own personal benefit.
10     6.   By devising, executing, and participating in the
11 fraudulent equipment lease scheme, defendant caused lenders to
12 lose thousands of dollars.
13 / / /
14 / / /
15 / / /
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28

1  III.  THE WIRING

2        7.    On or about the date listed below, in the Central

3  District of California, and elsewhere, defendant, for the purpose

4  of carrying out the above-described scheme to defraud, caused the

5  transmission of the following writing, sign, and signal, by means

6  of wire communication in interstate commerce:

| COUNT | DATE | WIRE COMMUNICATION |
|-------|------|--------------------|
| 1 | 4/12/06 | A signed lease agreement for Jaross Incorporated was e-mailed from I-Systems in Los Angeles, California to Technology Capital in Scottsdale, Arizona |

12  THOMAS P. O'BRIEN
13  United States Attorney

14  CHRISTINE C. EWELL
    Assistant United States Attorney
15  Chief, Criminal Division

16  [signature]

17  ROBB C. ADKINS
    Assistant United States Attorney
18  Chief, Santa Ana Branch Office

6