IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| 100 MOUNT HOLLY BYPASS et al.,<br><br>Plaintiffs,<br>v.<br><br>AXOS BANK et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT AXOS BANK'S MOTION TO STRIKE JURY DEMAND<br><br>Case No. 2:20-cv-00856-TS-CMR<br><br>Judge Ted Stewart |

This case comes before the Court on Defendants Axos Bank, Gregory Garrabrants, Barry Gordon, Jr., Kristen Phillips, and Jeff Pistorius' ("Axos Defendants") Motion to Strike Jury Demand.[1] For the reasons discussed below, the Court will grant the Motion.

I. BACKGROUND

Plaintiffs sue Defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* and for state law claims based on Defendants' alleged roles in a complex equipment leasing scheme.[2] Plaintiffs are 100 Mount Holly Bypass ("Mount Holly") which owns a large commercial building in New Jersey, Mile Technologies, Inc. ("Miles Tech"), a corporation that occupies part of the commercial building, and Christopher Miles, the sole member of Mount Holly and president of Miles Tech. Defendants are "Solar Experts," which include New Jersey Clean Energy Solutions, LLC, a company in the business of solar

---

[1] Docket No. 110.

[2] Docket No. 128.

1

systems, its president and CEO, David Widi Sr., and its director of marketing and sales, David Widi, Jr; Axos Defendants; and "TechEFI Defendants," which includes Tech Equipment Finance, LLC and its employee Everett Dorand, a broker involved in equipment finance.

Plaintiffs entered into several agreements to purchase and finance a solar system for the Mount Holly building, including a Purchase Agreement with Solar Experts and a Master Lease Agreement with Axos. Both agreements included jury waivers.

Axos Defendants ask the Court to strike Plaintiffs' jury demand arguing that the jury waivers contained in both the Purchase Agreement and the Master Lease Agreement are valid. The Purchase Agreement signed by Plaintiffs and Solar Experts reads as follows:

> THE PARTIES ACKNOWLEDGE AND AGREE THAT BY ENTERING INTO THIS PROVISION THEY ARE RELINQUISHING ANY RIGHT TO A JURY TRIAL OR TO HAVE ANY DISPUTE THAT ARISES HEREUNDER RESOLVED THROUGH LITIGATION.[3]

The Master Lease Agreement signed by Plaintiffs and Axos states the following:

> LESSOR AND LESSEE HEREBY WAIVE THE RIGHT TO TRIAL BY JURY OF ANY MATTERS ARISING OUT OF THE LEASE OR PROPERTY OR THE CONDUCT OF THE RELATIONSHIP BETWEEN LESSOR AND LESSEE.[4]

## II. DISCUSSION

The right to a jury trial in federal court is governed by federal law to ensure uniformity.[5] Because "the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver."[6] However, "[a]greements waiving the right to trial by jury are neither illegal nor contrary to public policy."[7] Generally, courts refuse to uphold contractual jury waivers where the

---

[3] Docket No. 128-4 ¶ 14.

[4] Docket No. 128-13 ¶ 20(f).

[5] *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988); *Simler v. Conner*, 372 U.S. 221, 221–22 (1963) (per curiam).

[6] *Aetna Ins. Co. v. Kennedy to Use of Bogash*, 301 U.S. 389, 393 (1937).

[7] *Telum*, 859 F.2d at 837 (citation omitted).

waiver was inconspicuous or there was a gross disparity in bargaining power.[8] While other district courts in the Tenth Circuit have concluded that the party seeking to enforce the waiver must establish that the waiver was knowing and voluntary, the District of Utah has not and the Tenth Circuit has avoided deciding the issue.[9]

    Even so, Axos sufficiently demonstrates that the waiver in the Master Lease Agreement was knowing and voluntary by showing that the waiver was conspicuous and there was not a gross disparity in bargaining power. Other courts in the District of Utah offer guidance regarding the parameters of what should be considered conspicuous. For example, where the waiver was in bold print and capitalized, one court found the waiver not to be inconspicuous,[10] while another concluded that bold print alone was sufficiently conspicuous.[11] Here, the waiver appears in all capitalized font which sets it apart from the other text in the contract. Additionally, Miles' initials are signed at the bottom of the page, indicating that he read and received the information on it, including the waiver. Plaintiffs argue that because 9 of the 21 paragraphs in the agreement are "in all caps" the capitalized waiver is inconspicuous. This is not persuasive. While there are 21 numbered paragraphs in the Master Lease, there are multiple lettered subsections, and while parts of paragraphs are capitalized, the conspicuous effect of the capitalization is not lost due to overuse. Plaintiffs also argue the "8 point font" is insufficiently conspicuous, however on inspection of the Master Lease, it appears that all provisions of the contract are the same font

---

[8] *Id.*

[9] *Hulsey v. West*, 966 F.2d 579, 581–82 (10th Cir. 1992) (concluding that based on the evidence presented, "[w]e need not resolve this issue," of whether "the district court improperly placed upon [petitioner] the burden of showing that the waiver was not knowing and voluntary").

[10] *Cont'l Bank v. Heag Pain Mgmt. Ctr., PA*, No. 2:19-cv-952 DBB, 2020 WL 4201254, at *2 (D. Utah July 22, 2020).

[11] *AVT New Jersey, L.P. v. Cubitac Corp.*, No. 2:19-cv-00662-JNP, 2020 WL 2801506, at *2 (D. Utah May 29, 2020).

with the exception of perhaps the couple bolded provisions. The Court therefore concludes that the jury waiver is conspicuous.

Plaintiffs assert that waiver is not valid due to a gross disparity in bargaining power between Axos and Plaintiffs. First, they argue that Axos does not show that Plaintiffs were sophisticated and that Miles did not have legal counsel. Axos counters with Miles' own deposition testimony in which he states that he owns two companies: 100 Mount Holly, the building where the panels were installed, and Miles Tech, which "has 490 employees, services roughly 1,500 different companies a year, and has an annual revenue of roughly $46 million a year."[12] Miles also testified that customers sign contracts with Miles Tech, with which "counsel was always involved" during his 25 years of business.[13] This testimony makes Plaintiffs' arguments ring hollow. Clearly, Plaintiffs are not unsophisticated.

Plaintiffs also assert that the gross disparity stems from undue pressure when on November 15, 2019, Widi Jr. told Miles it was urgent to sign and return the lease documents to prevent bumping back delivery of the solar materials from Sun Power, which would significantly delay the project. Plaintiffs also allege that Miles did not have a complete set of the lease documents until November 18. Miles testified in his deposition about discussions between Axos and himself about a scenario in which he would fund the deposit to Sun Power and Axos would reimburse him once the lease documents were executed.[14] However this was not required, as on November 18, Miles promptly signed and returned the lease documents. Plaintiffs state that absent the press of time Miles could have either liquidated investments to pay Sun Power or

---

[12] Docket No. 117-2, at 27:9–28:13, 29:19–30:12, 31:19–32:2.
[13] *Id.* at 31:23–33:9.
[14] Docket No. 112-5, at 280:22–281:12.

4

pursued alternative lending but would have lost 4% in solar tax credits that expired in December 2019.

Plaintiffs' arguments concerning undue pressure are not persuasive. The fact that Plaintiffs could have pursued other funding options, albeit at the expense of the loss of the 4% solar tax credit, demonstrates a lack of gross disparity in the bargaining power between the parties. Plaintiffs had options that did not involve signing the lease on November 18, 2019. Further, even if Plaintiffs elected not to involve legal counsel, they had access to counsel and used it in other dealings with customers. Therefore, the Court finds that the Master Lease jury waiver is valid and enforceable.

Plaintiffs argue that the even if the jury waiver in the Master Lease is valid it only applies to Axos Bank.[15] Their reasoning is that the jury waiver only applies to the "Lessor." Plaintiffs assert that including the individual Defendants employed by Axos Bank and the other Defendants would be an "expansive interpretation" that is akin to the finding in *Campbell Invests., LLC v. Dickey's Barbecue Rests., Inc.*,[16] in which the defendant sought an interpretation that would have involved plaintiffs "indefinitely waiving their right to a jury trial for any and all possible related and unrelated litigation between the parties."[17]

This argument fails. Courts have recognized six theories under contract law for how a nonsignatory may enforce an arbitration agreement: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) estoppel; and (6) third-party

---

[15] Docket No. 112, at 14.
[16] No. 2:17-cv-008322-DB-CMR, 2020 WL 927533 (D. Utah Feb. 2, 2020).
[17] *Id.* at *5.

beneficiary.[18] While the motion here involves a jury waiver, an arbitration agreement involves a similar waiver of trial rights. Here, Garrabrants, Gordon, Phillips, and Pistorius are agents of Axos, and therefore, may seek to enforce the waiver.

Moreover, the scope of the waiver is broad. The Master Lease states that "the Lessor and Lessee waive the right to trial by jury of any matters arising out of the lease or property or the conduct of the relationship between the lessor and lessee." Plaintiffs' leading claims in its Third Amended Complaint are RICO allegations that include allegations that all Defendants acted as an "enterprise" in a pattern of racketeering activity "in furtherance of the [ ] Defendants' scheme to defraud Plaintiffs in connection with the purchase, financing, and installation of the Solar System."[19] In addition to the RICO claims, Plaintiffs' remaining claims arise from the lease and property contemplated by the jury waiver. Therefore, the Court finds that the jury waiver is valid and will grant Axos' Motion to Strike. If the claims necessitate resolution by a trial, the Court will proceed by bench trial.

Based on this finding, the Court need not address the parties' arguments regarding the Purchase Agreement or equitable claims.

---

[18] *See Inception Mining, Inc. v. Danzig, Ltd.*, 311 F. Supp. 3d 1265, 1274 (D. Utah 2018); *Bridas S.A.P.I.C v. Gov't of Turkmenistan*, 345 F.3d 347, 355–56 (5th Cir. 2003); *Thomson-C.S.F., S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995); *E.I. Dupont de Nemours & Co. v. Rhone Poulenc*, 269 F.3d 187, 195–97 (3d Cir. 2001).

[19] Docket No. 128 ¶¶ 154–58.

## III. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Strike Jury Demand (Docket No. 110) is GRANTED.

DATED September 26, 2023.

BY THE COURT:

_____
TED STEWART
United States District Judge