IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| 100 MOUNT HOLLY BYPASS, LLC, et al.,<br><br>                           Plaintiffs,<br><br>v.<br><br>AXOS BANK, et al.,<br>                      Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANT'S MOTIONS IN LIMINE NOS. 1, 2, 3, and 5.<br><br>Case No. 2:20-cv-00856-TS<br><br>Judge Ted Stewart |

This matter comes before the Court on Defendant Axos Bank's Motions in Limine No. 1, No. 2, No. 3, and No. 5 filed in anticipation of the bench trial scheduled to begin on September 22, 2025. For the reasons discussed below, the Court will deny the Motions.

Federal Rule of Evidence 402 provides that only relevant evidence is admissible. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[1] Rule 403 excludes otherwise relevant evidence "[i]f its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." However, "excluding evidence in a bench trial under 'Rule 403's weigh of probative value against prejudice [is] improper.'"[2]

---

[1] Fed R. Evid. 401.

[2] *United States v. Kienlen*, 349 F. App'x 349, 351 (10th Cir. 2009) (quoting *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F. 2d 517, 519 (5th Cir. 1981)).

The parties agree that the two remaining issues before the Court are: "(1) the date the Lease Term should commence, and (2) what amount of damages, if any, Plaintiffs are entitled to receive."[3]

A. Motion in Limine No. 1

Defendant seeks to exclude evidence or opinion that the Commencement Date of the Lease is prior to July 1, 2020.[4] Pursuant to the Master Lease Agreement,

> 3. The term of the Lease . . . shall commence on the Acceptance Date . . . and shall continue for an Initial Period ending in the number of months from the Commencement Date as specified in the Schedule.
>
> . . . .
>
> 6. (a) After Lessee receives and inspects any Property and is satisfied that the Property is satisfactory, Lessee shall execute and deliver to Lessor an Acceptance Certification in form provided by Lessor; provided however, that Lessee's failure to execute and deliver an Acceptance Certificate for any Property shall not affect the validity and enforceability of the Lease with respect to the Property. If Lessee has signed and delivered a Master Progress Funding Agreement, Lessor may, in its sole discretion, at any time by written notice to Lessee, declare all prior Authorizations signed in connection with the Master Progress Funding Agreement to be and constitute the Acceptance Certificate for all purposes under the Lease, and the Acceptance Date of the Lease shall be the date determined by the Lessor in its sole discretion which shall not be earlier than the date of the last Authorization.[5]

Regarding the "Acceptance Date," the Master Lease provides  "[e]xcept as otherwise provided in Section 6(a) of the Master Lease Agreement, Acceptance Date means . . . the date Lessee accepts the Property as set forth in any Acceptance Certificate signed by the Lessee which is acceptable to Lessor."[6] The Master Lease further defines "Commencement Date" as follows: "[w]here the Acceptance Date for [the Property] falls on the first day of a calendar

---

[3] Docket No. 291, at 7.

[4] Docket No. 293.

[5] Docketed No. 293-1 ¶¶ 3, 6(a).

[6] *Id.* at 10.

quarter, that date or in any other case, the first day of the calendar quarter following the calendar quarter in which such Acceptance Date falls."[7]

In the Court's Summary Judgment Order it concluded that Defendant Axos Bank had breached the implied covenant of good faith and fair dealing by failing to commence the Lease in its discretion using an objective standard of reasonableness.[8]

Defendant seeks to exclude any evidence that it could have commenced the Lease prior to July 1, 2020, based on the above language in the Master Lease Agreement. They argue that since Plaintiffs informed Axos on April 29, 2020, that the Solar System was complete and Plaintiffs made their last authorization on May 18, 2020, that Axos did not have discretion to commence the Lease earlier than May 18, 2020.[9] Plaintiffs respond that the language of the Master Lease Agreement does not support Defendant's request and that Defendant had the discretion to commence the Lease prior to July 1, 2020, because Plaintiffs had received substantially all the Lease Property prior to January 1, 2020.[10]

The Court will deny the Motion without prejudice. Based on the Court's review of the Master Lease Agreement, evidence that the Lease could have commenced prior to July 1, 2020, is relevant to the two remaining issues before the Court and the probative value of the evidence is not substantially outweighed by the danger of undue delay, waste of time, or confusion of the issues. The Court finds that the evidence is therefore admissible. This does not limit Defendant from raising the objection at trial if necessary.

---

[7] *Id.*

[8] Docket 251, at 45.

[9] Docket No. 293, at 4.

[10] Docket No. 300, at 3.

3

B. Motion in Limine No. 2

Defendant seeks to exclude all evidence related to the "Blind Discount" between Axos Bank and New Jersey Clean Energy Solutions ("Solar Experts") as not relevant to the issues remaining for trial.[11] Plaintiffs assert that the Motion should be denied because it is overly broad by seeking to exclude all evidence regarding the discount and because Defendant has already stipulated to the admission of facts and evidence regarding the Blind Discount.[12]

The parties' Pretrial Order includes a statement of uncontroverted facts, which includes the following statement: "Solar Experts and Axos agreed to a discounted price, wherein Axos would fund the purchase of and own the Solar System for $3,177,055 instead of the $3,819,700 purchase price negotiated with Plaintiffs (the 'Blind Discount'). Copies of versions of the Blind Discount invoices shall be admissible at trial."[13] Defendant also identified the following as a Contested Issue of Law in the Pretrial Order: "Whether the issue of the Blind Discount is relevant to the remaining issues of when the Lease Term should have commenced and, any damages incurred by Plaintiffs due to Axos's decision not to commence the Lease Term."[14]

Plaintiffs further assert that they will not be arguing that the Blind Discount is relevant to the amount Plaintiffs are required to pay to Axos, but that the discount "is relevant to the issue of Plaintiffs' damages related to the lien actions filed by Cooper Electric and Solar Experts."[15]

The Court will deny the Motion. The lack of specificity does not allow the Court to conclude the evidence Defendant seeks to exclude is "clearly inadmissible on all potential

---

[11] Docket No 294.

[12] Docket No. 299, at 1, 3.

[13] Docket No. 291, at 8.

[14] *Id.* at 16.

[15] Docket No. 299, at 3.

grounds."[16] This is further bolstered by the parties' inclusion of the Blind Discount in their Statement of Uncontroverted Facts and Defendant's reference in the Pretrial Order. This ruling does not bar Defendant from raising objections during the bench trial regarding the Blind Discount, as necessary.

C. Motion in Limine No. 3

Defendant seeks to limit the testimony topics of Axos Bank's corporate designees.[17] In September 2025, Plaintiffs issued a Trial Subpoena to Axos Bank's Corporate Designee to appear and give testimony at the upcoming trial.[18] As part of the subpoena, Plaintiffs attached a list of fourteen "Topics for Examination."[19] Defendant seeks to exclude the testimony regarding the following seven topics as not relevant to the remaining issues:

(1) The equipment financing business of Axos and its policies, practices, and procedures for documenting, approving, funding, and administering its equipment financing transactions with customers.

(2) The management structure of Axos related to its equipment financing business and the decision-making process, and management authority for equipment financing comparable to the financing of the Solar System at issue in this Lawsuit.

(6) All communications and dealings between Axos Defendants and SunPower between June 1, 2019 and the present.

(8) The conduct of Axos related to the Cooper Electric lien and related litigation in New Jersey State Court.

(9) The conduct of Axos related to the NJCES lien filed against the Mt. Holly property and related litigation in New Jersey [S]tate Court.

---

[16] *Thomas v. Weber State Univ.*, No. 1:20-cv-0054, 2023 WL 2646905, at *1 (D. Utah Mar. 27, 2023) (quoting *Decker v. Target Corp.*, No. 1:16-CV-00171, 2018 WL 7350627, at *1 (D. Utah Oct. 12, 2018)).

[17] Docket No. 295.

[18] *Id.* at 2.

[19] Docket No. 295-1, at 14–15.

(12) The preparation, content, and approval of credit for lease financing, including the roles of personnel involved in the drafting and approving of Credit Authorization Memoranda, and the conditions, covenants, and lease structure reflected therein.

(13) The nature and meaning of the documents produced by Axos in response to Plaintiffs' document production requests.[20]

Defendant also argues that the remaining topics are overbroad in scope and seeks an order limiting the topics to only those matters relevant.

Plaintiffs argue that the Court should deny the Motion because it is overbroad and conclusory. Plaintiffs also assert that the evidence may be relevant for background information and context to make a fact at issue more or less probable, and point to Defendant's intention to introduce deposition testimonies of Robert Lyons and Everett Dorand regarding issues beyond the trial issues.[21]

"[I]t is a well settled principle that when a party seeks exclusion of a whole category of evidence, 'it is extremely difficult, if not impossible' to determine whether the evidence 'is irrelevant, unfairly prejudicial, or potentially misleading.'"[22] Furthermore, "orders in limine which exclude broad categories of evidence should rarely by employed. A better practice is to deal with questions of admissibility of evidence as they arise."[23] Accordingly, the Court declines to broadly exclude evidence of the topics raised by Defendant. Both parties may raise specific evidentiary objections at trial as necessary.

---

[20] *Id.*

[21] Docket No. 298, at 3.

[22] *Cassell v. SkyWest, Inc.*, 654 F. Supp. 3d 1222, 1240 (D. Utah 2023) (quoting *Hipwell v. Air & Liquid Sys. Corp.*, No. 1:20-cv-00063-JNP-JCB, 2022 WL 3999955, at *2 (D. Utah Aug. 31, 2022)).

[23] *Id.* (quoting *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)).

D. Motion in Limine No. 5

Defendant seeks to exclude all evidence relating to the Cooper Lien and the Solar Experts

Lien pursuant Federal Rules of Evidence 401, 402, 403.[24] Defendant argues that because it is not

responsible for either the Cooper Lien or the Solar Experts Lien, any evidence of the liens is not

relevant to the issues remaining for trial and should be excluded and, even if the Court deems the

evidence relevant, admission will confuse the issues and waste time.[25]

On February 21, 2020, Plaintiffs executed Partial Acceptance and Authorization No. 3,

authorizing Axos and Solar Experts to pay $250,000.00 to Cooper Electric Supply Company

("Cooper") for electrical supplies related to the solar system.[26] Axos paid Solar Experts

$250,000.00, after which Solar Experts failed to pay Cooper. In late 2020, Cooper levied a lien

against Plaintiffs' property and filed suit against Plaintiffs, Solar Experts, and Axos Bank in New

Jersey state court in January 2021.[27] The parties entered a settlement agreement pursuant to

which Axos Bank paid Solar Experts $250,000.00 to provide to Cooper to release the Lien and

dismiss the claims.[28] Solar Experts did so and agreed that the lien amount paid by Axos to

Cooper would be considered as part of the total cost of the Solar System.[29]

On June 24, 2020, Axos requested that Plaintiffs authorize Partial Acceptance and

Authorization for Progress Payment Certificate No. 5, to authorize the final disbursement of

---

[24] Docket No. 297.

[25] *Id.* at 4.

[26] Docket No 291, at 11.

[27] *Id.*

[28] *Id.*

[29] *Id.* at 11–12.

funds in the amount of $545,910.00 to Solar Experts.[30] Plaintiffs did not agree. In December 2020, Solar Experts levied a lien against Plaintiffs for $545,910.00 and filed an action in New Jersey state court to foreclose on the lien.[31] The action was thereafter dismissed without prejudice, but the lien remains in place.[32] The parties have agreed that a copy of Authorization Certificate No. 3 and the Solar Experts Lien shall be admissible at trial.[33]

Plaintiffs argue that evidence of the liens is relevant because if Axos would have commenced the Lease on January 1, 2020, the liens would not have been filed and Plaintiffs' damages related to defending the litigation related to the liens and the damages from the lien still in place are attributable to Defendant's failure to commence the Lease at the appropriate time.[34] Defendant argues that there is no basis in fact or reason that its decision not to commence the Lease caused the Cooper Lien litigation.[35] Defendant argues that similarly, the Solar Experts Lien is not attributable to its decision not to commence the Lease because the lien does not involve Defendant.[36]

The lien evidence appears to be relevant to the issues before the Court, particularly, if the Court concludes that Defendant should have commenced the Lease prior to the liens being issued. Further, the Court cannot conclude that the probative value of the evidence is substantially outweighed by the risk of confusing the issue or wasting time and will deny the

---

[30] Docket No. 297, at 3.

[31] Docket No. 251, at 14–15.

[32] Docket No. 297, at 3; Docket No. 291, at 11.

[33] Docket No. 291, at 10, 11.

[34] Docket No. 302, at 4.

[35] Docket No. 297, at 4.

[36] *Id.*

Motion without prejudice. Defendant may raise an objection to the evidence, at trial, if necessary.

DATED September 16, 2025.

BY THE COURT:

TED STEWART
United States District Judge